**LAURA EWING vs MED-1 SOLUTIONS, LLC**
**Victoria A. Thompson on 05/29/2020**

1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF INDIANA
2              INDIANAPOLIS DIVISION

3                  ---o0o---

4      Civil Action Number 1:18-cv-1743-JRS-DML

5

6    _____
                                            )
7    LAURA EWING,                           )
                                            )
8                                           )
                             Plaintiff,     )
9                                           )
            -vs-                            )
10                                          )
     MED-1 SOLUTIONS, LLC,                  )
11                                          )
                             Defendant.     )
12   _____)

13

14
             DEPOSITION of VICTORIA A. THOMPSON
15

16
             DATE:          MAY 29, 2020 (FRIDAY)
17
             TIME:          3:00 P.M.
18
             LOCATION:      Med-1 Solutions, LLC
19                          517 U.S. Highway 31 North
                            Greenwood, IN  46142
20

21           REPORTER:      TARA GANDEL HUDSON, RPR CRR

22

23

24

25

```
 1                    I N D E X

 2   DIRECT EXAMINATION ............................5
         Questions by David J. Philipps
 3   CROSS-EXAMINATION ...........................28
         Questions by Nicholas Moline
 4   REDIRECT EXAMINATION ........................31
         Questions by David J. Philipps
 5


 6
         Appearance Page.......................  2
 7
         Exhibit Page..........................  3
 8
         Certified Questions.................. (None)
 9
         Reporter's Certificate Page........... 37
10
         Errata Sheet.......................... 39
11

12                    APPEARANCES

13   FOR THE PLAINTIFF:
     Laura Ewing
14
              PHILIPPS & PHILIPPS, LTD.
15            9760 South Roberts Road
              Suite One
16            Palos Hill, IL  60465
              708.974.2900
17            davephilipps@aol.com

18            BY:  David J. Philipps, Esq.
              (Appearing telephonically)
19

20   FOR THE DEFENDANT:
     Med-1 Solutions, LLC
21
              MED-1 SOLUTIONS, LLC
22            517 U.S. Highway 31 North
              Greenwood, IN  46142
23            317.883.5615
              nicholas.moline@revonecompanies.com
24
              BY:  Nicholas Moline, Esq.
25
```

1

                    INDEX OF EXHIBITS
2                                                    PAGE
    Previously marked Exhibit:
3

    Exhibit  2 - 2-24-16 fax; Steinkamp to Med-1 ....8
4                Solutions

5   Exhibit 29 - Revision of Procedures ...........14

6   Exhibit  8 - (Group) Defendant's Second .......24
                 Supplemental Response to
7                Plaintiff's Document Production
                 Requests to Defendant
8
    Exhibit 10 - Chrisp - Complaint Seeking .......32
9                Damages for Violation of the Fair
                 Debt Collection Practices Act
10
    Exhibit 11 - Coons - Complaint Seeking ........32
11               Damages for Violation of the Fair
                 Debt Collection Practices Act
12
    Exhibit 12 - Ledford - Complaint Seeking ......32
13               Damages for Violation of the Fair
                 Debt Collection Practices Act
14
    Exhibit 13 - Chrisp - Complaint Seeking .......32
15               Damages for Violation of the Fair
                 Debt Collection Practices Act and
16               Violation of the Telephone Consumer
                 Protection Act
17
    Exhibit 14 - Morris - Complaint Seeking .......32
18               Damages for Violation of the Fair
                 Debt Collection Practices Act
19
    Exhibit 15 - Washington - Complaint Seeking ....32
20               Damages for Violation of the Fair
                 Debt Collection Practices Act
21
    Exhibit 16 - Chestnut - Complaint Seeking ......32
22               Damages for Violation of the Fair
                 Debt Collection Practices Act and
23               Violation of the Telephone Consumer
                 Protection Act

24


25

```
 1                    INDEX OF EXHIBITS
                                                   PAGE
 2     Previously marked Exhibit:

 3     Exhibit 17 - Swike - Complaint .................32

 4     Exhibit 18 - Hubbard - Complaint ...............32

 5     Exhibit 19 - Schoolcraft - Complaint Seeking ...32
                    Damages for Violation of the Fair
 6                  Debt Collection Practices Act

 7     Exhibit 20 - Duerson - Complaint Seeking .......32
                    Damages for Violation of the Fair
 8                  Debt Collection Practices Act

 9     Exhibit 21 - Daugherty - Complaint Seeking .....32
                    Damages for Violation of the Fair
10                  Debt Collection Practices Act

11     Exhibit 22 - Haskett - Complaint Seeking .......32
                    Damages for Violation of the Fair
12                  Debt Collection Practices Act

13     Exhibit 23 - Baxter - Complaint Seeking ........32
                    Damages for Violation of the Fair
14                  Debt Collection Practices Act

15     Exhibit 24 - Long - Complaint Seeking Damages ..32
                    for Violation of the Fair Debt
16                  Collection Practices Act

17     Exhibit 25 - Williams - Complaint Seeking ......32
                    Damages for Violation of the Fair
18                  Debt Collection Practices Act

19     Exhibit 26 - Leis - Complaint Seeking Damages ..32
                    for Violation of the Fair Debt
20                  Collection Practices Act

21     Exhibit 27 - Kennedy - Complaint Seeking .......32
                    Damages for Violation of the Fair
22                  Debt Collection Practices Act

23     Exhibit 28 - Wood - Complaint Seeking Damages ..32
                    for Violation of the Fair Debt
24                  Collection Practices Act

25                         --oOo--
```

```
 1   (3:02 p.m)
 2                  VICTORIA A. THOMPSON,
 3   having been first duly sworn to tell the truth, the
 4   whole truth and nothing but the truth relating to
 5   said matter, was examined and testified as follows:
 6
 7   DIRECT EXAMINATION,
 8       QUESTIONS BY DAVID J. PHILIPPS:
 9   Q   Good afternoon, Ms. Thompson.  I'm David
10       Philipps.
11   A   Hello.
12   Q   I'm the attorney for the plaintiff in a case
13       called Ewing vs. Med-1.  Are you able to hear me
14       okay?
15   A   Yes.
16   Q   Have you ever given a deposition before?  One of
17       these things?  Answering questions under oath?
18   A   No.
19   Q   All right.  So let me just give you some brief
20       ground rules.
21           I'm going to ask you questions.  Because
22       this is over the phone, please be patient to
23       make sure I'm done asking you a question before
24       you answer.  I'm going to do my best to make
25       sure I don't cut off your answer.  If I do, it's
```

```
 1        not intentional.  It may be just because of the
 2        phone clipping out.  If that happens, just stop
 3        me, and we'll start again.
 4             Okay?
 5   A    Okay.
 6   Q    And all your answers need to be verbal.  Even if
 7        it's a really good headshake "Uh-huh" or
 8        headshake "Huh-uh," it's hard for our court
 9        reporter to take that down.
10             Okay?
11   A    Yes.
12   Q    If you need a break, if you're just tired of
13        answering questions, let me know and we'll take
14        a break, although I don't think this is going to
15        be very long.
16             Okay?
17   A    Okay.
18   Q    The only time I don't want you to take a break
19        is if I have a question pending.  You need to
20        answer the question before we take a break.
21             Okay?
22   A    Okay.
23   Q    How long have you worked at Med-1?
24   A    Over 13 years.
25   Q    And what were you hired to do 13 years ago?
```

1  A   Medical collector.

2  Q   And how long were you a medical collector?

3  A   About seven months.

4  Q   Did your role change at some point in time?

5  A   Yes.  I was hired as --

6          I was transferred to the receptionist

7      position.

8  Q   And do you know roughly when you became the

9      receptionist?

10 A   Around February or March of 2007.

11 Q   So based on my math -- this is 2020, and we take

12     off 13 years -- that would put us back into

13     2007.

14         So you weren't a medical collector for very

15     long, were you?

16 A   No.

17 Q   And is it correct that you are the receptionist

18     at Med-1 today?

19 A   Yes.

20 Q   And is it correct that you were the receptionist

21     at Med-1 throughout 2016?

22 A   Yes.

23 Q   The events at issue here took place in 2016.

24         Are you aware of that?

25 A   Yes.

1   Q   Sitting here today, are you able to tell me what

2       you specifically did or didn't do on any given

3       day in 2016?

4   A   No.

5   Q   Fair enough.

6           MR. PHILIPPS:  Could we show the witness

7       what's been marked as Exhibit 2.

8           (Deposition Exhibit 2 previously marked for

9       identification.)

10  BY MR. PHILIPPS:

11  Q   Ms. Thompson, will you take a minute and thumb

12      your way through Exhibit 2, and let me know when

13      you're ready to talk about it.

14  A   I'm ready.

15  Q   Other than seeing Exhibit 2 here today, which is

16      a fax cover sheet and a letter, do you recall

17      receiving and doing anything with this document

18      on or about February of 2016?

19  A   No.

20  Q   Is it correct that besides answering the phone

21      at Med-1, you're there to greet and direct

22      anybody who comes into the offices?

23  A   Yes.

24  Q   And you open the mail?

25  A   Yes.

1    Q    And you distribute the mail?

2    A    Yes.

3    Q    Ms. Thompson, could you keep your voice up a

4         little bit?  I'm having a little bit of trouble

5         hearing you.

6    A    Okay.  Yes.

7    Q    Thank you very much.

8              No one's ever accused me of not being

9         heard; so I'm probably way louder than you are.

10        Maybe that's what's causing me to go deaf, in

11        part.  If you could speak up, I'd greatly

12        appreciate that.

13             So sitting here today, you don't recall

14        what you did or didn't do with Exhibit 2 when it

15        came in, do you?

16   A    No.

17   Q    And the date of this fax is February 24, 2016;

18        right?

19   A    Yes.

20   Q    I'm sorry, did you answer that?

21   A    "Yes."

22   Q    And you would agree that the fax number listed

23        there is your firm's main fax number?

24   A    Yes.

25   Q    And that number is 317.883.5602?

```
 1   A    Yes.

 2   Q    And that's the fax machine that's right up by

 3        you at the reception desk; right?

 4   A    Yes.

 5   Q    One of your jobs is to take these faxes when

 6        they come in and route them to wherever they're

 7        supposed to go; right?

 8   A    Yes.

 9   Q    And how do you physically handle one of these

10        faxes?  And if you could, let me just ask you

11        did the fax machine print out these faxes, back

12        in 2016, when they came in?

13   A    No.

14   Q    Was it the kind of system where you had to look

15        at the machine every once in a while and go, Oh,

16        there's a fax, and I'll print it out?

17   A    No.

18   Q    Why don't you explain to me --

19            I'm just asking about this period

20        February 2016.  Okay?  If it changed, I don't

21        want to ask about that.  I want to ask about if

22        you remember February 2016.

23   A    Yes.

24   Q    How would you have known that this fax was at

25        your machine?
```

1   A   I check my computer email.  They come through an

2       attachment.  I check the faxes, and I pull them

3       up, and then I re-email them to the correct

4       departments.

5   Q   Do you physically look at the fax on your

6       screen?  Does it come up?

7   A   Yes.

8   Q   Here's the fax for me to look at the entire fax

9       on a screen, or is it just there's a fax that

10      came in?

11  A   No.  I can physically look at it.

12  Q   And do you always physically look at them?

13  A   Yes.

14  Q   And then you just forward that notice on to a

15      department?

16  A   I forward it to the department that it is

17      supposed to go to, either -- most likely the

18      department managers.

19  Q   And this fax is from an attorney, John

20      Steinkamp; right?

21  A   Yes.

22  Q   In your time as a receptionist, you've seen

23      faxes from Mr. Steinkamp before; right?

24  A   Yes.

25  Q   It's your company's position that this fax got

```
 1       forwarded to the cares department.

 2            Are you familiar with the cares department?

 3   A   The client care?  Yes.

 4   Q   Right.

 5            You're familiar with it?

 6   A   Yes.

 7   Q   Assuming that this fax got sent to the cares

 8       department and shouldn't have been sent there,

 9       was there any procedure for the cares department

10       to send it back to you?

11   A   I don't know their procedure.

12   Q   All I want to know is your knowledge.

13            Was there any procedure for the cares

14       department to forward it on to the correct

15       department if it had been misforwarded?

16   A   I don't know.

17   Q   Do you recall ever being told that in 2016,

18       right around February, that you had misforwarded

19       this fax?

20   A   No.

21   Q   To date, have you ever been told that you

22       misforwarded any attorney faxes?

23   A   Yes.  This one.

24   Q   And when did that happen?

25   A   I don't remember.
```

1   Q   Oh, was it within the last year?  Last two

2       years?

3   A   Within the last two years.

4   Q   How about any other faxes?  Have you been told

5       any other faxes were misforwarded other than

6       this one?

7   A   No.

8   Q   And I mean faxes about attorney representation

9       or disputes?

10  A   No.

11  Q   Do you read the substance of the fax, or do you

12      just see that it's from an attorney and then

13      forward it on to whatever you think is supposed

14      to be the right department?

15  A   I see if it's from an attorney; and if it's from

16      an attorney's office, I send it to our legal

17      department.  I don't need to read any more.

18  Q   Is there a written procedure for that?

19  A   Yes.

20  Q   And what's that written procedure?

21  A   In anything that comes in from an attorney's

22      office, any legal documents go to the legal

23      department.

24  Q   All right.  Let me take a look here, if we

25      could, at Exhibit --

1          MR. PHILIPPS:  What's that one that we had,

2      the late one?  Is it 29, Madam Court Reporter?

3          THE REPORTER:  Yes, it is.

4   BY MR. PHILIPPS:

5   Q   Let's look at 29, could we, please,

6      Ms. Thompson?

7   A   I don't know what that is.

8   Q   She's going to give it to you here in a second.

9          Okay?

10          (Deposition Exhibit 29 previously marked

11      for identification.)

12   Q   Could you look at those two pages?

13   A   Yes.

14   Q   Is this the written procedure you referred to?

15   A   The one from 2012, yes.

16   Q   Well, is there another one from 2016?  Was there

17      an updated procedure?

18   A   Yes.

19   Q   When was it updated?

20   A   I don't know.  I don't have it with me.

21   Q   All right.  Well, let's just look at this one

22      for now.

23          Okay?

24   A   Okay.

25   Q   You were the receptionist in 2012 when this

```
 1        procedure was put in place; right?

 2   A    Yes.

 3   Q    I'm sorry, did you say "Yes"?

 4   A    "Yes."

 5   Q    Okay.  Thank you.

 6             And you would agree that it says:  1,

 7        Purpose, How to distribute incoming faxes from

 8        the main fax line 317-883-5602; right?

 9   A    Yes.

10   Q    And do you see, then, there's another one that

11        says:  3, Procedures; right?

12   A    Yes.

13   Q    And there's a subpoint there that says:  A and

14        then 6; right?

15   A    Yes.

16   Q    And colloquially here, just kind of generally,

17        it says:  No recipient.  Trying to figure out

18        somebody such as employment verifications go to

19        HR; right?

20   A    Yes.

21   Q    Medical records and financial assistance go to

22        client care; right?

23   A    Yes.

24   Q    Requests for account information or proof of

25        payment go to the collection manager; right?
```

1   A   Yes.

2   Q   I didn't hear you.  Did you say "Yes"?

3   A   Oh, "Yes."

4   Q   And then the last one says:  Court

5       correspondence goes to legal manager; right?

6   A   Yes.

7   Q   That procedure doesn't say:  Things from

8       attorneys go to the legal manager, does it?

9   A   No.

10  Q   It doesn't say:  Credit report disputes go to

11      the legal manager, does it?

12  A   No.

13  Q   If you go to the second page of this fax

14      procedure deal, you see it says:  Distributing

15      incoming faxes?

16  A   Yes.

17  Q   Do you see the author, Mindy Edwards?

18  A   Yes.

19  Q   Do you know who Mindy Edwards was --

20  A   Yes.

21  Q   -- in 2012?

22          Who was she?

23  A   The human resource director.

24  Q   She left Med-1 at some point in time?

25  A   Yes.

LAURA EWING vs MED-1 SOLUTIONS, LLC
Victoria A. Thompson on 05/29/2020                                    Page 17

```
 1   Q   Do you know roughly when?

 2   A   Not positive.

 3   Q   Well, did she leave before 2016 or after?

 4   A   Not positive.

 5   Q   If you know.

 6   A   I'm not -- I can't be exact.  Between '15 and

 7       '16.  I don't know exactly.

 8   Q   All right.  And you would agree with me that on

 9       the second page here, it doesn't say anything

10       about correspondence or faxes from attorneys go

11       to the legal department.  It doesn't say that on

12       here; right?

13   A   Right.

14   Q   And can you tell me how many faxes you handled

15       on a given day in 2016?

16   A   No.

17   Q   Can you tell me how much mail you handled on a

18       given day in 2016?

19   A   No.

20   Q   Can you tell me how much time on average in 2016

21       it took you to handle clerical duties such as

22       mail and faxes?

23   A   No.

24   Q   Can you tell me in 2016, specifically February,

25       what your average workload was.
```

```
 1              What was the biggest thing that you were

 2        busy doing in a given day?

 3              Maybe I can give you an example.

 4    A   I can't say exactly.

 5    Q   Let me give you an example if I could.

 6              Okay?

 7    A   Okay.

 8    Q   You got a lot of stuff up there at the front;

 9        right?

10    A   Yes.

11    Q   I assume you're answering phone calls; right?

12    A   Yes.

13    Q   I assume you're signing for FedExes coming in

14        and UPS; right?

15    A   Yes.

16    Q   Are you also sending them out for people when

17        they need to be sent out?

18    A   No.

19    Q   So you're signing for packages; you're talking

20        to people on the phone that are calling; you're

21        greeting visitors.

22              Correct?

23    A   Yes.

24    Q   Did you also have to make coffee?

25    A   No.
```

```
 1   Q   Did you have to clean up, like, an employee

 2       kitchen or cafeteria?

 3   A   No.

 4   Q   What other kind of duties would you have been

 5       doing in 2016 that haven't been covered by what

 6       we talked about that you did do?

 7   A   I can't --

 8           I can't think of anything.

 9   Q   How about today?  Have your duties changed

10       greatly since 2016 to 2020?

11   A   No.

12   Q   So let's go back.

13           Did you work yesterday?

14   A   Yes.

15   Q   What took up most of your time yesterday?

16   A   I do mail, scanning.  That takes up a lot of my

17       time.

18   Q   Okay.  Let me ask you again because I wasn't

19       quite sure.

20           Did you say email?

21   A   No.  Mail, US mail.

22   Q   US mail.

23           So you had to open up all the

24       correspondence that came in?

25   A   Yes.
```

1   Q   How much time did that take yesterday?

2   A   I can't be exact.

3   Q   Do you work eight hours a day?

4   A   Yes.

5   Q   So my own receptionist does.  She doesn't just

6       open it.  Then she figures out what to do with

7       it.

8           Is that part of your job?

9   A   Yes.

10  Q   Some of the mail goes to the legal department;

11      some of the mail goes to the boss; some of the

12      mail might be payments that go to the people

13      that handle payments; some of them might be some

14      stuff from your customers.

15          You might have to send that to people who

16      deal with customers; is that correct?

17  A   Yes.

18  Q   You're not just sitting there and taking the

19      knife and opening up the envelopes.  You're

20      actually doing something with all the envelopes;

21      right?

22  A   Yes.

23  Q   And when did the mail generally come in?

24  A   Before noon.

25  Q   So 11:00 on average?

```
 1   A   11:45.

 2   Q   All right.

 3           How long did it take you, from 11:45 to

 4       lunch, to get all that mail wrangled around?

 5   A   I start the mail after lunch.  I come back at

 6       noon.  It takes probably about an hour and a

 7       half.

 8   Q   All right.  That's a significant amount of time.

 9           What else were you doing yesterday?  Were

10       you answering the phone?

11   A   Yes.

12   Q   And roughly how many calls do you think you

13       answered?  I'm asking ballpark.  A hundred

14       calls?  How many calls?

15   A   I'm not positive.  Maybe 50 to a hundred.

16   Q   Is that kind of an average day?

17   A   Yes.

18   Q   What do you have to do when a call comes in?

19   A   I determine which department it goes to, and I

20       transfer it to the right department.

21   Q   Are some of those calls easier than others?

22   A   It is when they tell me which department they

23       need.

24   Q   Do you get calls from debtors?

25   A   Yes.
```

1   Q   And are those sometimes a little bit more

2       difficult because people are upset and aren't

3       really describing enough information for you to

4       get them on to where they need to go?

5   A   I just sometimes have to ask them a couple

6       questions to determine which department it is.

7   Q   And these 50 to a hundred calls, roughly how

8       much time does that take you a day?  A couple

9       hours?

10  A   I don't know.  What do you mean?  Each call?

11  Q   No.  Complete --

12  A   Hours --

13  Q   -- if you had to answer and deal with all the

14      calls all at once, I mean, continuously, is that

15      two, three hours out of your day?  Four hours

16      out of your day?

17  A   I can't say positively.  I don't know.

18  Q   Well, maybe I'll ask it a different way.

19          Is there a lot of downtime where you're

20      doing nothing?

21  A   No.

22  Q   You're a busy point; right?  You're the front

23      person; right?

24  A   Yes.

25  Q   You're kind of the point guard of the basketball

1      team distributing the ball, as they come in, all

2      around to the rest of the players; right?

3   A  Yes.

4   Q  You're not just sitting there staring at the fax

5      machine; right?

6   A  No.

7   Q  You're not just sitting there staring at your

8      computer and watching the stock market go up and

9      down; right?

10  A  No.

11  Q  Is there a paper log that you create of all the

12     faxes as they came in back in 2016?

13  A  No.

14  Q  Was there any backup system that you're aware of

15     in 2016 for the handling of logs?  And a backup

16     system could be something like, I would then

17     print out all the faxes and put them off in a

18     binder.

19  A  We don't use a fax machine.  They come through

20     the computer, and we save them into a folder so

21     if I need to look for one later, I can go and

22     find it.  So I save it to a folder for each

23     department.

24  Q  Is it a uniform -- not a uniform --

25         Is it a folder that you can look up all the

 1    faxes that showed up in one day --

 2  A   If I go to that --

 3  Q   -- if you go by department?

 4  A   By department.

 5        MR. PHILIPPS:  Let's take five minutes, if

 6     that's okay, Mr. Moline.  I want to see if we're

 7     complete with Ms. Thompson and send her back to

 8     her -- on her way.

 9        Do you anticipate many questions for her?

10        MR. MOLINE:  No.  I may have a couple

11     clarifying questions for her but not many, no.

12        MR. PHILIPPS:  Let's revisit with each

13     other here at --

14        How about we make it at 3:40.

15        MR. MOLINE:  Okay.  Sounds good.

16        MR. PHILIPPS:  Give us a little bit of time

17     here.  Okay?

18        MR. MOLINE:  Thank you.

19        MR. PHILIPPS:  We'll reconnect back at

20     3:40, 2:40 my time.

21        (A recess was taken between 3:28 p.m. and

22     3:37 p.m.

23        MR. PHILIPPS:  Can you show the witness

24     what's been marked as Group Exhibit 8.

25        (Deposition Exhibit 8 previously marked for

```
 1       identification.)

 2   BY MR. PHILIPPS:

 3   Q   Ms. Thompson, can you look back in the middle of

 4       Group Exhibit 8, and there's, like, a screenshot

 5       with a bunch of stuff blacked out on it.

 6           Can you find that page?

 7   A   Yes.

 8   Q   Do you see the entry that --

 9           I think we were having the witness circle

10       it.

11           MR. PHILIPPS:  Is there one that's circled

12       on that page --

13   A   Yes.

14           MR. PHILIPPS:  -- Counsel?

15   A   Oh, yes.

16   BY MR. PHILIPPS:

17   Q   Do you see that, Ms. Thompson?

18   A   Yes.

19   Q   Do you recognize this is like a shot from your

20       screen of your computer?

21   A   Yes.

22   Q   But you don't know anything about this exact

23       screen; right?  You just know this looks like

24       your screen?

25   A   No.  I know it is mine.
```

1   Q   Okay.  But do you know anything about the data

2       put forth there from 2016?

3   A   Yes.

4   Q   You don't have any independent memory of, Oh,

5       that was a great screen back in 2016, do you?

6   A   No.

7   Q   Now, we were guessing that if you look at that

8       one that's circled kind of in the lower

9       middle -- I called it a "paper clip," and your

10      boss said it was a squiggly line -- on the far

11      left, is that an attachment icon?

12  A   Yes.

13  Q   Before the word:  Client care internal?

14  A   Yes.

15  Q   Then it says:  Thursday, February 25, 2016,

16      8:06 a.m?

17  A   Yes.

18  Q   Do you see that?

19  A   Yes.

20  Q   And it says:  35 kB?

21  A   Yes.

22  Q   Does that tell you, in any way, shape, or form,

23      what that sent item was?

24  A   No.

25  Q   Does that tell you, in any way, shape, or form,

1    whether you sent it or somebody else filling in

2    sent it?

3  A  It says that I sent it.

4  Q  And you know for a fact you were working on

5    February 25, 2016?

6  A  Yes.

7  Q  How do you know that?

8  A  Because that's my sent items off my email.

9  Q  Well, if someone fills in at the front desk, do

10    they use the same email, or do they have to sign

11    in as themselves?

12  A  They have to sign in as themselves.

13  Q  Okay.  So if you look at the upper left, there's

14    a partial email -- it looks like a partial email

15    address.

16       Would you circle that, please, where it

17    says:  Victoria.Thompson@Med-1S...

18  A  Okay, I did.

19  Q  And that's the indication to you and me that

20    that means it's your email?

21  A  Yes.

22  Q  But sitting here today, you don't know what that

23    sent was or why you sent it to the client care

24    internal; right?

25  A  Right.

1  Q  It looks like you've got quite a few items in

2     your email.

3        Would you look in the left corner and read

4     out how many emails -- or how many items you had

5     at that point.

6  A  I can't see real good.

7  Q  Lower left corner.

8  A  It looks like it says:  45,600.

9  Q  That's what it looks like to me.

10       Would you circle that and put your initials

11    by it?

12 A  Okay.

13       MR. PHILIPPS:  Counsel, same stipulation

14    that we reached is we would like whatever that

15    email is and whatever the attachment is

16    produced.

17       And with that, I would tender the witness

18    back to you with a caveat and agreement that I

19    get to ask her what that is if and when it's

20    produced.

21       Is that fair?

22       MR. MOLINE:  That's fair.

23 CROSS-EXAMINATION,

24    QUESTIONS BY NICHOLAS MOLINE:

25

1   Q   Do you still have Exhibit 29?

2           MR. PHILIPPS:  What was the exhibit number?

3           MR. MOLINE:  I handed her Exhibit 29.

4           MR. PHILIPPS:  Okay.  Great.  I just wanted

5       to grab it.

6   BY MR. MOLINE:

7   Q   Vicki, can you identify what this document is?

8   A   It's our procedures for opening the faxes and

9       distributing the faxes.

10  Q   And to the best of your knowledge, this was the

11      procedure in place on February 25, 2016?

12  A   Yes.

13  Q   If you look at Section 3 entitled "Procedures,"

14      Number 6, can you read the -- just read the last

15      clause there that starts "Court," for me,

16      please.

17  A   Court correspondence goes to legal, the manager.

18  Q   Thank you.

19          It says:  Court correspondence goes to

20      legal manager.

21          What does "court correspondence" mean to

22      you?

23  A   Any legal documents.

24          MR. PHILIPPS:  I'll object.  I think that's

25      hearsay.

```
 1               But you can answer.
 2   A   Any legal correspondence.  Any legal matter.
 3   BY MR. MOLINE:
 4   Q   And why do you believe that's what that term
 5       means?
 6   A   I think it was put in there as a general thing,
 7       but as I was taught, any legal documents and any
 8       legal correspondence goes to our legal
 9       department.
10   Q   When you say "legal correspondence," what does
11       that mean?
12               What do you mean by "legal correspondence"?
13   A   It could be court, anything from attorneys,
14       anything from -- just any -- any legal matter,
15       bankruptcies, any legal thing that would go to
16       court or to do with our legal department.
17   Q   So a letter from an attorney --
18               Your testimony was that you were trained
19       that a letter from an attorney is court
20       correspondence?
21   A   Yes.
22   Q   Okay.  Vicki, how long have you worked for
23       Med-1?
24   A   Over -- almost 14 years.
25   Q   And can you estimate, over those 14 years, how
```

1      many faxes you've received?

2   A   I've received millions of faxes.

3   Q   Okay.  Have you ever --

4       Other than this case, have you ever had an

5       instance where you forwarded a fax to the wrong

6       department?

7   A   No.  No, I don't.  Not that I've heard of or

8       ever experienced, no.

9   Q   This is the only matter that you're aware of in

10      which this has happened in your 13 years?

11  A   Yes.

12      MR. MOLINE:  I have no further questions,

13      Dave.  Do you have any follow-up?

14      MR. PHILIPPS:  Yeah, I do.

15  REDIRECT EXAMINATION,

16      QUESTIONS BY DAVID J. PHILIPPS:

17  Q   So you say you received millions.

18      Do you think it's 2 million?  3 million?

19      1 million?

20  A   Over that many years, it could be 3 or 4 or

21      5 million.  I can't be exact.

22  Q   Let's go with 4 million.  Divide it by 13.

23      It would be roughly 307,000 faxes a year;

24      is that correct?

25  A   I mean, that sounds like it could be okay.

1    Q    I'm just doing the math.

2    A    I mean, I can't be positive.  I don't know

3         exactly.

4    Q    You don't work 365 days a year, do you?  You

5         work Monday through Friday?

6    A    Yes.

7    Q    That's about 200 days a year.

8              Is it your testimony, then, that you handle

9         about 1,500 faxes a day?

10   A    No.

11   Q    Let's just use a million.  Divide it by 13.

12        That would be about 76,923 faxes.  Divide that

13        by about 200 working days.

14             Is it your testimony you receive over 380

15        faxes a day?

16   A    No.

17   Q    And then if we looked at Exhibits 10 through

18        28 --

19             MR. PHILIPPS:  And you could just show

20        those to Ms. Thompson in general.

21             (Deposition Exhibits 10 through 28,

22        inclusive, previously marked for

23        identification.)

24   BY MR. PHILIPPS:

25   Q    If I told you, Ms. Thompson, that 10 through 28

```
1        contain a number of cases involving faxes from
2        John Steinkamp that weren't correctly noted, did
3        they bother to talk to you about any of these
4        complaints at any time?
5    A   No.
6    Q   And you know what court correspondence is;
7        right?  In the actual literal sense; right?
8    A   Yes.
9    Q   Something from a court; right?
10   A   Yes.
11   Q   It has what's called a "case caption" on it.  It
12       says it's from this court and it involves this
13       person; right?
14   A   Yes.
15   Q   You see lots of bankruptcy notices; right?
16   A   Yes.
17   Q   And those say:  In the United States District
18       Court, Bankruptcy Court for wherever they went
19       broke; right?
20   A   Yes.
21   Q   And it says:  In re: Debtor, with the debtor's
22       name in it; right?  And there's a case number
23       and all that sort of stuff; right?
24   A   Yes.
25   Q   And you've seen stuff that's come in where Med-1
```

1      is suing a debtor from one of its clients;

2      right?

3   A  Yes.

4   Q  That has a case caption on it similar.  It says:

5      Med-1 as the Assignee vs. John Debtor; right?

6   A  Yes.

7   Q  And then it has a case number on it and all that

8      kind of thing; right?

9   A  Yes.

10  Q  And you would agree that, as we discussed

11     before, 29 does not say:  Legal correspondence;

12     right?

13  A  Right.

14  Q  And it doesn't say:  Attorney correspondence;

15     right?

16  A  Right.

17  Q  And it doesn't have any backup procedures;

18     right?  That you're supposed to copy A on a fax

19     or make a duplicate copy, or if a fax goes to

20     the wrong person, it should be sent back; right?

21  A  Right.

22  Q  And there's nothing in there that says:  Client

23     care, send faxes back or forward them on if

24     they're not yours; right?

25  A  Right.

1   Q   So your testimony is you were trained that court

2       correspondence included anything involving

3       attorneys; right?

4   A   Right.  Any legal -- any legal documents, yes.

5   Q   Not in the written policies and procedures;

6       right?

7   A   It's not in this one, no.

8   Q   And I asked you, and you said you thought there

9       might be something more current or after that.

10          But I think you just answered and said, in

11      response to Mr. Moline, that this is, in fact,

12      the policy and procedures in effect in 2016; is

13      that correct?

14  A   This one, I'm -- yes.

15          MR. PHILIPPS:  And, Mr. Moline, I would ask

16      that, if, in fact, that's incorrect and there's

17      a policy and procedure from 2016, that that be

18      produced.

19          MR. MOLINE:  We will do that in agreement

20      to what we stipulated earlier.

21          MR. PHILIPPS:  Or confirm that no -- this

22      is, in fact, the written policy and procedure.

23          MR. MOLINE:  Correct.

24          MR. PHILIPPS:  Is that fair?

25          MR. MOLINE:  That's fair.

1        MR. PHILIPPS:  I have nothing further for

2    this witness -- thank you, Ms. Thompson --

3    unless your counsel has some other questions.

4        MR. MOLINE:  I have nothing further.  Thank

5    you, Vicki.

6        THE WITNESS:  Thank you.

7        MR. PHILIPPS:  Do you want to read and

8    sign, Nick?

9        MR. MOLINE:  Yeah, I would like to.  Yes.

10        MR. PHILIPPS:  Great.  Everybody have a

11    great Friday.

12        THE REPORTER:  You'd like a copy of this?

13        MR. MOLINE:  Yes.

14        (Time noted:  3:52 p.m.)

15        AND FURTHER THE DEPONENT SAITH NOT.

16

17                    _____

18                         VICTORIA A. THOMPSON

19

20

21

22

23

24

25

```
1
                          ERRATA SHEET
2

3     PAGE _____    LINE _____

4     CHANGE _____

5     REASON FOR CHANGE _____

6

7     PAGE _____    LINE _____

8     CHANGE _____

9     REASON FOR CHANGE _____

10

11    PAGE _____    LINE _____

12    CHANGE _____

13    REASON FOR CHANGE _____

14

15    PAGE _____    LINE _____

16    CHANGE _____

17    REASON FOR CHANGE _____

18
      PAGE _____    LINE _____
19
      CHANGE _____
20
      REASON FOR CHANGE _____
21

22
      PAGE _____    LINE _____
23
      CHANGE _____
24
      REASON FOR CHANGE _____
25
```

```
 1
                              ERRATA SHEET
 2                            (Continued)

 3     PAGE _____     LINE _____

 4     CHANGE _____

 5     REASON FOR CHANGE _____

 6

 7     PAGE _____     LINE _____

 8     CHANGE _____

 9     REASON FOR CHANGE _____

10     PAGE _____     LINE _____

11     CHANGE _____

12     REASON FOR CHANGE _____

13

14     PAGE _____     LINE _____

15     CHANGE _____

16     REASON FOR CHANGE _____

17

18     PAGE _____     LINE _____

19     CHANGE _____

20     REASON FOR CHANGE _____

21

22                      _____

23                              Victoria A. Thompson

24

25
```

```
 1   STATE OF INDIANA              )
                                   )  SS:
 2   COUNTY OF HANCOCK             )

 3        I, Tara Gandel Hudson, RPR, CRR, a Notary

 4   Public in and for the County of Hancock, State of

 5   Indiana at large, do hereby certify that the

 6   deponent herein, VICTORIA A. THOMPSON, was by me

 7   first duly sworn to tell the truth, the whole

 8   truth, and nothing but the truth in the

 9   aforementioned matter;

10        That the foregoing deposition was taken on

11   behalf of the Plaintiff at the offices of Med-1

12   Solutions, LLC, 517 U.S. Highway 31 North,

13   Greenwood, Johnson County, Indiana, on the 29th day

14   of May, 2020, commencing at 3:02 p.m., pursuant to

15   the Federal Rules of Civil Procedure;

16        That said deposition was taken down

17   stenographically and transcribed to English under

18   my direction, and that the transcript is a true

19   record of the testimony given by said deponent; and

20   that the signature of said deponent to her

21   deposition was requested;

22        That the parties were represented by their

23   counsel as aforementioned.

24        I do further certify that I am a disinterested

25   person in this cause of action; that I am not a
```

1    relative or attorney of either party, or otherwise

2    interested in the event of this action, and am not

3    in the employ of the attorneys for either party.

4         IN WITNESS WHEREOF, I have hereunto set my

5    hand and affixed my notarial seal this 10th day of

6    June, 2020.

7

8                    *Tara Gandel Hudson*
     _____
9                   Tara Gandel Hudson
                          Seal
10          Notary Public, State of Indiana
                  Commission No. 682534
11        My Commission Expires March 27, 2024

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**LAURA EWING vs MED-1 SOLUTIONS, LLC**
Victoria A. Thompson on 05/29/2020                    Index: 1..50

_____
Exhibits

ThompsonV 2
   3:3 8:7,8,
   12,15 9:14
ThompsonV 8
   3:6 24:24,
   25 25:4
ThompsonV 10
   3:8
ThompsonV 11
   3:10
ThompsonV 12
   3:12
ThompsonV 13
   3:14
ThompsonV 14
   3:17
ThompsonV 15
   3:19
ThompsonV 16
   3:21
ThompsonV 17
   4:3
ThompsonV 18
   4:4
ThompsonV 19
   4:5
ThompsonV 20
   4:7
ThompsonV 21
   4:9

ThompsonV 22
   4:11
ThompsonV 23
   4:13
ThompsonV 24
   4:15
ThompsonV 25
   4:17
ThompsonV 26
   4:19
ThompsonV 27
   4:21
ThompsonV 28
   4:23
ThompsonV 29
   3:5 14:10
   29:1,3

_____
     1

1   15:6
   31:19
1,500   32:9
10   32:17,
   21,25
11:00   20:25
11:45   21:1,3
13   6:24,25
   7:12
   31:10,22
   32:11
14   30:24,25
15   17:6

16   17:7

_____
     2

2   8:7,8,12,
   15 9:14
   31:18
200   32:7,13
2007   7:10,
   13
2012   14:15,
   25 16:21
2016   7:21,
   23 8:3,18
   9:17
   10:12,20,
   22 12:17
   14:16
   17:3,15,
   18,20,24
   19:5,10
   23:12,15
   26:2,5,15
   27:5 29:11
   35:12,17
2020   7:11
   19:10
24   9:17
25   26:15
   27:5 29:11
28   32:18,
   21,25
29   14:2,5,
   10 29:1,3
   34:11

2:40   24:20

_____
     3

3   15:11
   29:13
   31:18,20
307,000
   31:23
317-883-5602
   15:8
317.883.5602
   9:25
35   26:20
365   32:4
380   32:14
3:02   5:1
3:28   24:21
3:37   24:22
3:40   24:14,
   20
3:52   36:14

_____
     4

4   31:20,22
45,600   28:8

_____
     5

5   31:21
50   21:15
   22:7

---

**6**

---

**6**   15:14
    29:14

---

**7**

---

**76,923**   32:12

---

**8**

---

**8**   24:24,25
    25:4

**8:06**   26:16

---

**A**

---

**a.m**   26:16

**account**
    15:24

**accused**   9:8

**actual**   33:7

**address**
    27:15

**afternoon**
    5:9

**agree**   9:22
    15:6  17:8
    34:10

**agreement**
    28:18
    35:19

**amount**   21:8

**answering**

5:17  6:13
8:20  18:11
21:10

**answers**   6:6

**anticipate**
    24:9

**Assignee**
    34:5

**assistance**
    15:21

**assume**
    18:11,13

**Assuming**
    12:7

**attachment**
    11:2  26:11
    28:15

**attorney**
    5:12  11:19
    12:22
    13:8,12,15
    30:17,19
    34:14

**attorney's**
    13:16,21

**attorneys**
    16:8  17:10
    30:13  35:3

**author**   16:17

**average**
    17:20,25
    20:25
    21:16

**aware**   7:24
    23:14  31:9

---

**B**

---

**back**   7:12
    10:11
    12:10
    19:12  21:5
    23:12
    24:7,19
    25:3  26:5
    28:18
    34:20,23

**backup**
    23:14,15
    34:17

**ball**   23:1

**ballpark**
    21:13

**bankruptcies**
    30:15

**bankruptcy**
    33:15,18

**based**   7:11

**basketball**
    22:25

**biggest**   18:1

**binder**   23:18

**bit**   9:4
    22:1  24:16

**blacked**   25:5

**boss**   20:11
    26:10

**bother**   33:3

**break**   6:12,
    14,18,20

**broke**   33:19

**bunch**   25:5

**busy**   18:2
    22:22

---

**C**

---

**cafeteria**
    19:2

**call**   21:18
    22:10

**called**   5:13
    26:9  33:11

**calling**
    18:20

**calls**   18:11
    21:12,14,
    21,24
    22:7,14

**caption**
    33:11  34:4

**care**   12:3
    15:22
    26:13
    27:23
    34:23

**cares**   12:1,
    2,7,9,13

**case**   5:12
    31:4
    33:11,22

34:4,7

cases   33:1

causing   9:10

caveat   28:18

change   7:4

changed
  10:20 19:9

check   11:1,2

circle   25:9
  27:16
  28:10

circled
  25:11 26:8

clarifying
  24:11

clause   29:15

clean   19:1

clerical
  17:21

client   12:3
  15:22
  26:13
  27:23
  34:22

clients   34:1

clip   26:9

clipping   6:2

coffee   18:24

collection
  15:25

collector

7:1,2,14

colloquially
  15:16

company's
  11:25

complaints
  33:4

complete
  22:11 24:7

computer
  11:1 23:8,
  20 25:20

confirm
  35:21

continuously
  22:14

copy   34:18,
  19 36:12

corner   28:3,
  7

correct
  7:17,20
  8:20 11:3
  12:14
  18:22
  20:16
  31:24
  35:13,23

correctly
  33:2

correspondence
  16:5 17:10
  19:24
  29:17,19,

21 30:2,8,
  10,12,20
  33:6
  34:11,14
  35:2

counsel
  25:14
  28:13 36:3

couple   22:5,
  8 24:10

court   6:8
  14:2 16:4
  29:15,17,
  19,21
  30:13,16,
  19 33:6,9,
  12,18 35:1

cover   8:16

covered   19:5

create   23:11

Credit   16:10

CROSS-
EXAMINATION
  28:23

current   35:9

customers
  20:14,16

cut   5:25

───────────

      D

───────────

data   26:1

date   9:17
  12:21

Dave   31:13

David   5:8,9
  31:16

day   8:3
  17:15,18
  18:2 20:3
  21:16
  22:8,15,16
  24:1 32:9,
  15

days   32:4,
  7,13

deaf   9:10

deal   16:14
  20:16
  22:13

debtor   33:21
  34:1,5

debtor's
  33:21

debtors
  21:24

department
  11:15,16,
  18 12:1,2,
  8,9,14,15
  13:14,17,
  23 17:11
  20:10
  21:19,20,
  22 22:6
  23:23
  24:3,4
  30:9,16
  31:6

departments
  11:4

DEPONENT
  36:15

deposition
  5:16  8:8
  14:10
  24:25
  32:21

describing
  22:3

desk  10:3
  27:9

determine
  21:19  22:6

difficult
  22:2

direct  5:7
  8:21

director
  16:23

discussed
  34:10

disputes
  13:9  16:10

distribute
  9:1  15:7

distributing
  16:14  23:1
  29:9

District
  33:17

Divide  31:22

32:11,12

document
  8:17  29:7

documents
  13:22
  29:23  30:7
  35:4

downtime
  22:19

duly  5:3

duplicate
  34:19

duties  17:21
  19:4,9

——————————

          E

——————————

earlier
  35:20

easier  21:21

Edwards
  16:17,19

effect  35:12

email  11:1
  19:20
  27:8,10,
  14,20
  28:2,15

emails  28:4

employee
  19:1

employment
  15:18

entire  11:8

entitled
  29:13

entry  25:8

envelopes
  20:19,20

estimate
  30:25

events  7:23

Ewing  5:13

exact  17:6
  20:2  25:22
  31:21

EXAMINATION
  5:7  31:15

examined  5:5

exhibit  8:7,
  8,12,15
  9:14  13:25
  14:10
  24:24,25
  25:4  29:1,
  2,3

Exhibits
  32:17,21

experienced
  31:8

explain
  10:18

——————————

          F

——————————

fact  27:4

35:11,16,
22

fair  8:5
  28:21,22
  35:24,25

familiar
  12:2,5

fax  8:16
  9:17,22,23
  10:2,11,
  16,24
  11:5,8,9,
  19,25
  12:7,19
  13:11  15:8
  16:13
  23:4,19
  31:5
  34:18,19

faxes  10:5,
  10,11
  11:2,23
  12:22
  13:4,5,8
  15:7  16:15
  17:10,14,
  22  23:12,
  17  24:1
  29:8,9
  31:1,2,23
  32:9,12,15
  33:1  34:23

February
  7:10  8:18
  9:17
  10:20,22

12:18
17:24
26:15 27:5
29:11

Fedexes
 18:13

figure  15:17

figures  20:6

filling  27:1

fills  27:9

financial
 15:21

find  23:22
 25:6

firm's  9:23

folder
 23:20,22,
 25

follow-up
 31:13

form  26:22,
 25

forward
 11:14,16
 12:14
 13:13
 34:23

forwarded
 12:1 31:5

Friday  32:5
 36:11

front  18:8
 22:22 27:9

---
### G
---

general  30:6
 32:20

generally
 15:16
 20:23

get all  21:4

give  5:19
 14:8 18:3,
 5 24:16

good  5:9
 6:7 24:15
 28:6

grab  29:5

great  26:5
 29:4
 36:10,11

greatly  9:11
 19:10

greet  8:21

greeting
 18:21

ground  5:20

Group  24:24
 25:4

guard  22:25

guessing
 26:7

---
### H
---

half  21:7

handed  29:3

handle  10:9
 17:21
 20:13 32:8

handled
 17:14,17

handling
 23:15

happen  12:24

happened
 31:10

hard  6:8

headshake
 6:7,8

hear  5:13
 16:2

heard  9:9
 31:7

hearing  9:5

hearsay
 29:25

hired  6:25
 7:5

hour  21:6

hours  20:3
 22:9,12,15

HR  15:19

Huh-uh  6:8

human  16:23

hundred
 21:13,15
 22:7

---
### I
---

icon  26:11

identification
 8:9 14:11
 25:1 32:23

identify
 29:7

included
 35:2

inclusive
 32:22

incoming
 15:7 16:15

incorrect
 35:16

independent
 26:4

indication
 27:19

information
 15:24 22:3

initials
 28:10

instance
 31:5

intentional
 6:1

internal
 26:13
 27:24

involves

33:12

**involving**
  33:1 35:2

**issue** 7:23

**item** 26:23

**items** 27:8
  28:1,4

---

**J**

---

**job** 20:8

**jobs** 10:5

**John** 11:19
  33:2 34:5

---

**K**

---

**kb** 26:20

**kind** 10:14
  15:16 19:4
  21:16
  22:25 26:8
  34:8

**kitchen** 19:2

**knife** 20:19

**knowledge**
  12:12
  29:10

---

**L**

---

**late** 14:2

**leave** 17:3

**left** 16:24

26:11
27:13
28:3,7

**legal** 13:16,
  22 16:5,8,
  11 17:11
  20:10
  29:17,20,
  23 30:2,7,
  8,10,12,
  14,15,16
  34:11 35:4

**letter** 8:16
  30:17,19

**listed** 9:22

**literal** 33:7

**log** 23:11

**logs** 23:15

**long** 6:15,
  23 7:2,15
  21:3 30:22

**looked** 32:17

**lot** 18:8
  19:16
  22:19

**lots** 33:15

**louder** 9:9

**lower** 26:8
  28:7

**lunch** 21:4,5

---

**M**

---

**machine**
  10:2,11,
  15,25
  23:5,19

**Madam** 14:2

**mail** 8:24
  9:1 17:17,
  22 19:16,
  21,22
  20:10,11,
  12,23
  21:4,5

**main** 9:23
  15:8

**make** 5:23,
  24 18:24
  24:14
  34:19

**manager**
  15:25
  16:5,8,11
  29:17,20

**managers**
  11:18

**March** 7:10

**marked** 8:7,8
  14:10
  24:24,25
  32:22

**market** 23:8

**math** 7:11
  32:1

**matter** 5:5
  30:2,14
  31:9

**means** 27:20
  30:5

**Med-1** 5:13
  6:23 7:18,
  21 8:21
  16:24
  30:23
  33:25 34:5

**medical** 7:1,
  2,14 15:21

**memory** 26:4

**middle** 25:3
  26:9

**million**
  31:18,19,
  21,22
  32:11

**millions**
  31:2,17

**Mindy** 16:17,
  19

**mine** 25:25

**minute** 8:11

**minutes** 24:5

**misforwarded**
  12:15,18,
  22 13:5

**Moline** 24:6,
  10,15,18
  28:22,24

29:3,6
30:3 31:12
35:11,15,
19,23,25
36:4,9,13

**Monday** 32:5

**months** 7:3

---
### N

**NICHOLAS**
28:24

**Nick** 36:8

**noon** 20:24
21:6

**noted** 33:2
36:14

**notice** 11:14

**notices**
33:15

**number** 9:22,
23,25
29:2,14
33:1,22
34:7

---
### O

**oath** 5:17

**object** 29:24

**office**
13:16,22

**offices** 8:22

**one's** 9:8

**open** 8:24
19:23 20:6

**opening**
20:19 29:8

---
### P

**p.m** 5:1

**p.m.** 24:21,
22 36:14

**packages**
18:19

**pages** 14:12

**paper** 23:11
26:9

**part** 9:11
20:8

**partial**
27:14

**patient** 5:22

**payment**
15:25

**payments**
20:12,13

**pending** 6:19

**people**
18:16,20
20:12,15
22:2

**period** 10:19

**person** 22:23
33:13
34:20

**Philipps**
5:8,10
8:6,10
14:1,4
24:5,12,
16,19,23
25:2,11,
14,16
28:13
29:2,4,24
31:14,16
32:19,24
35:15,21,
24 36:1,7,
10

**phone** 5:22
6:2 8:20
18:11,20
21:10

**physically**
10:9 11:5,
11,12

**place** 7:23
15:1 29:11

**plaintiff**
5:12

**players** 23:2

**point** 7:4
16:24
22:22,25
28:5

**policies**
35:5

**policy**
35:12,17,

22

**position** 7:7
11:25

**positive**
17:2,4
21:15 32:2

**positively**
22:17

**previously**
8:8 14:10
24:25
32:22

**print** 10:11,
16 23:17

**procedure**
12:9,11,13
13:18,20
14:14,17
15:1 16:7,
14 29:11
35:17,22

**procedures**
15:11
29:8,13
34:17
35:5,12

**produced**
28:16,20
35:18

**proof** 15:24

**pull** 11:2

**Purpose** 15:7

**put** 7:12
15:1 23:17

26:2 28:10
30:6

―――――――――

**Q**

―――――――――

question
  5:23 6:19,
  20

questions
  5:8,17,21
  6:13 22:6
  24:9,11
  28:24
  31:12,16
  36:3

―――――――――

**R**

―――――――――

re-email
  11:3

reached
  28:14

read 13:11,
  17 28:3
  29:14 36:7

ready 8:13,
  14

real 28:6

recall 8:16
  9:13 12:17

receive
  32:14

received
  31:1,2,17

receiving

8:17

reception
  10:3

receptionist
  7:6,9,17,
  20 11:22
  14:25 20:5

recess 24:21

recipient
  15:17

recognize
  25:19

reconnect
  24:19

records
  15:21

REDIRECT
  31:15

referred
  14:14

relating 5:4

remember
  10:22
  12:25

report 16:10

reporter 6:9
  14:2,3
  36:12

representation
  13:8

Requests
  15:24

resource
  16:23

response
  35:11

rest 23:2

revisit
  24:12

role 7:4

roughly 7:8
  17:1 21:12
  22:7 31:23

route 10:6

rules 5:20

―――――――――

**S**

―――――――――

SAITH 36:15

save 23:20,
  22

scanning
  19:16

screen 11:6,
  9 25:20,
  23,24 26:5

screenshot
  25:4

Section
  29:13

send 12:10
  13:16
  20:15 24:7
  34:23

sending

18:16

sense 33:7

shape 26:22,
  25

sheet 8:16

shot 25:19

show 8:6
  24:23
  32:19

showed 24:1

sign 27:10,
  12 36:8

significant
  21:8

signing
  18:13,19

similar 34:4

sitting 8:1
  9:13 20:18
  23:4,7
  27:22

sort 33:23

sounds 24:15
  31:25

speak 9:11

specifically
  8:2 17:24

squiggly
  26:10

staring
  23:4,7

**LAURA EWING vs MED-1 SOLUTIONS, LLC**
Victoria A. Thompson on 05/29/2020          Index: start..workload

start 6:3
  21:5
starts 29:15
States 33:17
Steinkamp
  11:20,23
  33:2
stipulated
  35:20
stipulation
  28:13
stock 23:8
stop 6:2
stuff 18:8
  20:14 25:5
  33:23,25
subpoint
  15:13
substance
  13:11
suing 34:1
supposed
  10:7 11:17
  13:13
  34:18
sworn 5:3
system 10:14
  23:14,16

          T

takes 19:16
  21:6

taking 20:18
talk 8:13
  33:3
talked 19:6
talking
  18:19
taught 30:7
team 23:1
tender 28:17
term 30:4
testified
  5:5
testimony
  30:18
  32:8,14
  35:1
thing 18:1
  30:6,15
  34:8
things 5:17
  16:7
Thompson
  5:2,9 8:11
  9:3 14:6
  24:7 25:3,
  17 32:20,
  25 36:2,18
thought 35:8
thumb 8:11
Thursday
  26:15
time 6:18

7:4 11:22
  16:24
  17:20
  19:15,17
  20:1 21:8
  22:8
  24:16,20
  33:4 36:14
tired 6:12
today 7:18
  8:1,15
  9:13 19:9
  27:22
told 12:17,
  21 13:4
  32:25
trained
  30:18 35:1
transfer
  21:20
transferred
  7:6
trouble 9:4
truth 5:3,4

          U

Uh-huh 6:7
uniform
  23:24
United 33:17
updated
  14:17,19
upper 27:13

UPS 18:14
upset 22:2

          V

verbal 6:6
verifications
  15:18
Vicki 29:7
  30:22 36:5
VICTORIA 5:2
  36:18
Victoria.
thompson@med-
1s 27:17
visitors
  18:21
voice 9:3

          W

wanted 29:4
watching
  23:8
word 26:13
work 19:13
  20:3 32:4,
  5
worked 6:23
  30:22
working 27:4
  32:13
workload
  17:25

**wrangled**
  21:4

**written**
  13:18,20
  14:14
  35:5,22

**wrong**  31:5
  34:20

---
         **Y**
---

**year**  13:1
  31:23
  32:4,7

**years**  6:24,
  25 7:12
  13:2,3
  30:24,25
  31:10,20

**yesterday**
  19:13,15
  20:1 21:9