**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| Laura Ewing,<br><br>    Plaintiff,<br><br>v.<br><br>MED-1 Solutions, LLC,<br><br>    Defendant. | CIVIL ACTION<br><br>1:18-cv-1743-JRS-DML |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

MED-1 Solutions, LLC ("Defendant"), by counsel files its Brief In Support of Its Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment. In support of its motion states as follows:

### I.    INTRODUCTION

This matter involves claims brought by Plaintiff against Defendant under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff Laura Ewing ("Plaintiff") alleges that Defendant violated the FDCPA by failing to report the debts, in which it was collecting, as disputed to TransUnion.

Defendant is entitled to summary judgment because Plaintiff cannot demonstrate a genuine dispute regarding any material fact sufficient to warrant a trial on her claims. Assuming that Plaintiff has met her burden, any error made by Defendant was unintentional, bona fide, and occurred despite procedures reasonably adapted to avoid such error. Plaintiff cannot set forth specific facts showing that there is a genuine issue for trial regarding Defendant's bona fide error

1

defense, Defendant is entitled to summary judgment with respect to the alleged FDCPA violations.

## II.     SUMMARY OF RELEVANT FACTS

### A. Defendant's Material Facts Not In Dispute

Defendant submits the following Statement of Material Facts Not in Dispute pursuant to F.R.C.P. 56(c) and S.D. Ind. L.R. 56-1, in support of its Motion for Summary Judgment:

1. In 2015, Defendant was assigned accounts from Community Health Network to attempt to collect a debt from Plaintiff. Dkt 14 ¶ 17.

2. On February 25, 2016 Defendant received a letter via facsimile from Plaintiff's Attorney John Steinkamp disputing the debt Defendant was attempting to collect. Dkt. 14 ¶¶ 28-29

3. On April 17, 2018 Defendant was continuing to report the Plaintiff's debt to TransUnion without indicating that the debt was disputed. Dkt. 14 ¶ 32.

### B. Defendant's Material Facts In Dispute

1. Defendant disputes that its reporting of the debt to TransUnion without indicating that the debt was disputed has impacted Plaintiff's credit reputation and/or credit score. Plaintiff's Credit Reports, show a FICO Score change from +535 to +554 between April 17, 2018 and January 25, 2019. Dkt. 48 Group Exhibit C. The documents are heavily redacted including the section titled "Explanation" and therefore a comprehensive explanation from TransUnion is not provided. Plaintiff has been unable to provide the Credit Reports requested from TransUnion prior to April 17, 2018. Dkt. 49 Exhibit 1 at ¶ 4; Dkt. 49 Exhibit 2 at ¶¶ 1-2; Dkt. 49 Exhibit 3 at ¶¶ 3-4. The FICO Score is not calculated exclusively based on Defendant's reporting but considers all of Plaintiff's accounts and payment history.  Plaintiff provides no

evidence that any increase or decrease in the FICO score was the result of Defendant not reporting the accounts as disputed.

2. In Plaintiff's, *Memorandum In Support of Summary Judgment*, Plaintiff lists a series of cases filed against Defendant since 2016. Dkt. 48 at ¶ 15. The cases listed are all cases in which Plaintiff's counsel in this matter, John Steinkamp and David Philipps represented the Plaintiffs.

3. Plaintiff and/or Plaintiff's counsel have intentionally misled this court regarding the cases listed. Plaintiff states "Since 2016, at least nineteen lawsuits have been filed in the Southern District of Indiana against Defendant MED-1 regarding violations of §1692e(8) of the FDCPAs, **for failures to report that disputed debts have been disputed.**" (Emphasis Added) Dkt. 48 ¶ 15. In the following cases the Plaintiff did not make allegations of a violation of §1692e(8) nor that MED-1 Solutions failed to report the debt as disputed:

   Chrisp v. Med-1, No. 1:16-cv-2516-TWP-MJD[1]
   Ledford v. Med-1, No. 1:16-cv-2786-JMS-DML[2]
   Chrisp v. Med-1, No. 1:17-cv-223-LJM-MJD[3]
   Swike v. Med-1, No. 1:17-cv-1503-JMS-MPB[4]

   There is simply no excuse for Plaintiff's counsel to misrepresent to this Court the allegations in cases in which they were also the counsel of record, other than to try to mislead this Court by attempting to include as long of a list as they could dream up to further their false narrative.

4. None of the cases listed by Plaintiff in its Memorandum in Support, Dkt. 48 ¶ 15, resulted in either a finding of liability by the Court or an admission of liability by MED-1 Solutions.

---

[1] Plaintiff's Counsel John Steinkamp filed the complaint in this matter.
[2] Plaintiff's Counsel John Steinkamp filed the complaint in this matter.
[3] Plaintiff's Counsel John Steinkamp filed the complaint in this matter.
[4] Plaintiff's Counsel David Philipps filed the complaint in this matter.

Dkt. 49 Exhibit 4 at p 79 at ln 23 through p. 93 ln 10. Furthermore, in three of the listed cases, the Plaintiff voluntarily dismissed the claim following discovery. These are as follows:

    Ledford v. Med-1, No. 1:16-cv-2786-JMS-DML[5]
    Chrisp v. Med-1, No. 1:17-cv-223-LJM-MJD[6]
    Morris v. Med-1, No. 1:17-cv-224-TWP-MPB[7]

It is at best disingenuous of Plaintiff's counsel to imply as they do here, that MED-1 had any responsibility to change its policies or procedures for cases in which Plaintiff's current counsel were also counsel of record and their clients voluntarily dismissed the actions following discovery and realizing they were unable to support their baseless allegations against MED-1.

5. In none of the cases listed by Plaintiff, was there a mishandling of the distribution of faxes as there is in this case, and Plaintiff's counsel, being the counsel of record on those cases has MED-1's discovery responses to substantiate the fact that MED-1 never claimed a bona fide error stemming from a mishandling of faxes, as is what it has claimed in this current case.

6. MED-1 did not cease the practice of reporting consumer debts to credit reporting bureaus due to its inability to properly handle consumer disputes of credit reports as Plaintiff alleges. Dkt. 48 ¶17. MED-1 ceased this practice because "it's not worth it…" for MED-1 to undertake the expense of defending baseless lawsuits brought by consumer law attorneys trying to obtain a quick settlement. Dkt. 49 Exhibit 4 at p. 18 at ln 20-25. The cost to defend these cases is high even when the Plaintiff ultimately dismisses the claim see Morris v. Med-1, No. 1:17-cv-224-TWP-MPB[8] in which Plaintiff dismissed a case alleging violations of §1692e(8) following discovery.

---

[5] Plaintiff's Counsel John Steinkamp filed the complaint in this matter.
[6] Plaintiff's Counsel John Steinkamp filed the complaint in this matter
[7] Plaintiff's Counsel John Steinkamp filed the complaint in this matter
[8] Plaintiff's Counsel John Steinkamp filed the complaint in this matter

### III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). A defendant can prevail on summary judgment merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [any essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, quoting Fed. R. Civ. P. 56(c). Once a defendant meets its initial obligation of showing there is no genuine dispute of material fact, the onus shifts to the plaintiff to come forward with admissible evidence from which a reasonable jury could find that she has met her burden of proof. Id. at 322-23. It is not enough to produce "colorable" evidence; a plaintiff must proffer "significantly probative" evidence, and cannot rely on mere allegations. *Anderson*, 477 U.S. at 247-49, 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Similarly, speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. *Roney v. Illinois Dept. of Transp.*, 376 F. Supp. 2d 857, 864-65 (N.D. Ill. 2005) aff'd, 474 F.3d 455 (7th Cir. 2007).

### IV.   DEFENDANT's ARGUMENT

**A. DEFENDANT IS ENTITLED TO JUDGMENT IN ITS FAVOR BECAUSE ANY FAILURE TO REPORT PLAINTIFF'S ACCOUNT AS DISPUTED WAS A BONA FIDE ERROR AS DFEINED IN 15 U.S.C. § 1692k(c).**

5

Assuming that this Court finds that Defendant failed to report the account as disputed in violation of §1692e(8), §1692e, §1692d, and/or §1692f of the FDCPA, the evidence not in dispute demonstrates that Defendant is entitled to the protection of the FDCPA's bona fide error affirmative defense.

"The FDCPA contains two exceptions to provisions imposing liability on debt collectors. Section 1692k(c), at issue here provides that

'[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'"

*Jerman v. Carlisle, McNeillie, Rini, Kramer & Ulrich, L.P.A.,* 130 S. Ct. 1605, 1609 (2010). To qualify for the bona fide error defense, a Debt collector must make three showings under §1692k(c): "(1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error…; and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." *Kort v Diversified Colletion Services, Inc.,* 394 F.3d 531, 537 (7th Cir. 2005); see also *Jenkins v. Heintz,* 124 F.3d 824, 834 (7th Circ. 1997).

The alleged violation in the present case is Defendant's alleged failure to report a debt as disputed to TransUnion following its receipt of a fax correspondence from Plaintiff's Attorney on February 25, 2016. Dkt. 48 at pgs. 1-2. As explained in the subsequent paragraphs, any failure by Defendant to report the debt as disputed was an unintentional bona fide error that occurred despite the existence of policies and procedures reasonably adapted to avoid this error from occurring. Defendant is therefore entitled to judgement in its favor pursuant to §1692k(c).

**1. Defendant's failure to report the account as disputed was not intentional.**

Victoria Thompson is the receptionist for Defendant, she has been in this position since 2007 and was the receptionist in 2016 at the time the correspondence in issue in this case was received. Dkt. 49 Exhibit 5 at p 7 at ln 9 through 22. One of her responsibilities as receptionist is to review faxes and route them to the correct department. Dkt. 49 Exhibit 5, at p 10 at ln 5-8. When Ms. Thompson receives a fax from an attorney's office she forwards that fax to Defendant's legal department. Dkt. 49 Exhibit 5, at p 13 at ln 11-17. The correspondence at issue in this matter was sent from Plaintiff's attorney, John Steinkamp. Dkt. 1 at ¶¶ 28-29; Dkt. 1-2 Exhibit A at ¶ 4. Ms. Thompson in her thirteen years as receptionist was familiar with attorney Steinkamp's correspondence. Dkt. 49 Exhibit 5, at p 11 at ln 19-24. Knowing that Mr. Steinkamp was an attorney, her procedure was to forward this fax to the legal department. Dkt. 49 Exhibit 5, at p 13 at ln 15-17. In fact, between 4:57 PM on February 24, 2016 and 10:56 AM on February 25, 2016 Ms. Thompson Forwarded six (6) incoming faxes from Attorney Steinkamp. Five of these were correctly forwarded to Christine Norris the legal department manager at that time. These were forwarded 2/24/2016 at 4:57 PM, 2/24/2016 at 4:58 PM, 2/24/2016 4:58 PM, 02/25/2016 at 10:50 AM, and 02/25/2016 at 10:56 AM. The correspondence received as part of this case was unintentionally forwarded to the Client Care Department's mailing group "ClientCareInternal" at 02/25/2016 at 8:04 AM. See Dkt. 49 Exhibit 6, which is a screenshot of Ms. Thompson's Microsoft Outlook Sent Folder[9]. Dkt. 49 Exhibit 5 at p 25 at ln 3 through p 27 ln 21. The five faxes that Ms. Thompson properly forwarded to the Legal Department Manager were functionally identical to the fax at issue in this case. They were each for different clients of Mr. Steinkamp's. See Dkt. Exhibit 7 which are redacted copies of each of these faxes sent by Mr. Steinkamp.

---

[9] The e-mail sent at 8:06 am to ClientCareInternal was mistakenly left unredacted and unrelated to this case. Defendant has produced a copy of this e-mail to Plaintiff.

7

The fax at issue was mistakenly forwarded to the client care department by Ms. Thompson. The client care department does not handle credit reporting, the client care department exclusively interacts with Defendant's hospital clients. Dkt. 49 Exhibit 4 at p 66 at ln 24 through p 66 at ln 12. Any failure to report this debt to TransUnion is clearly an unintentional result of Ms. Thompson mistakenly sending the fax from Plaintiff's attorney to a department that does not handle credit reporting. Had this fax been sent to the legal department, as the other five faxes sent that same day were, the account would have been marked disputed and reported as such pursuant to Defendant's procedure on marking a debt disputed. Dkt. 49 Exhibit 8 at p 53. The foregoing evidence establishes that Defendant's alleged violation was not intentional.

**2. Defendant's failure to report the debt as disputed was bona fide error made in good faith and a genuine mistake.**

It is clear that any error made by Defendant was bona fide. That is "an error made in good faith; a genuine mistake as opposed to a contrived mistake." *Kort v. Diversified Collection Service, Inc.,* 394 F. 3d 531, 538 (7th Cir. 2005) (citing *Black's Law Dictionary* 168 (7th ed. 1999)); see also *Edwards v. McCormick,* 136 F. Supp. 2d 795, 801 n. 8 (S.D. Ohio 2001).

Defendant's receptionist Ms. Thompson received the fax from Plaintiff's attorney and sent it to the wrong department; one that is not tasked with reporting disputes to TransUnion. In a 24-hour period, Ms. Thompson sent five other functionally identical faxes from attorney Steinkamp to the proper department to be marked as disputed and reported to TransUnion as such. This taken with the fact that Ms. Thompson testified in her deposition that her procedure was to forward attorney correspondence to the legal department, and that she was familiar that John Steinkamp was an attorney supports the conclusion that Defendant's alleged violation was

bona fide, made in good faith, and a genuine mistake. Defendant is entitled to a finding that as a matter of law, any alleged FDCPA violation was committed in good faith.

### 3. Defendant maintains procedures reasonably adapted to prevent the specific error at issue.

The evidence is clear that the alleged violation here was the result of an error that occurred despite Defendant's maintenance of policies and procedures reasonably adapted to avoid the specific violation alleged in this case, failing to report a debt as disputed to TransUnion and the other credit reporting agencies.

Defendant maintains a comprehensive and extensive procedure for marking a debt as disputed and reporting it to the credit reporting agencies as such. Dkt. 49 Exhibit 8 at p. 53. This procedure details what an employee should do when a debtor notifies the Defendant that it is disputing a debt that is currently being reported to the credit bureaus. Defendant's collection software and system of record is FACS by Ontario Systems. Dkt. 49 Exhibit 4 at p 30 at ln 21. Within this software there is a window which is numbered "68." When a debtor informs MED-1 that it disputes a debt that is being reported to any of the Credit Reporting Agencies, the field labeled "Disputed" is marked as D. This field identifies to the Credit Reporting Agency that the Debtor has disputed the debt. As a fail-safe Defendant's procedures require any employee to notify a manager of any disputes and the manager reviews the account to make sure the dispute was properly inputted. Dkt. 49 Exhibit 8 at p. 53.

In this specific instance the dispute did not make it to the Legal Department in order for the legal department manager to mark the account as disputed. Despite Defendant having procedures that have been in place for over a decade that all court correspondence which includes letters from attorneys be sent to the legal department, Defendant's receptionist who has

followed this procedure for more than a decade mistakenly sent the fax at issue to a department that does not handle disputes and credit reporting. MED-1 had two procedures that had been created and in place during Ms. Thompson's time as the receptionist, 1. "Distributing Incoming Faxes" Dkt. 49 Exhibit 9 and 2. "Work Instruction – How to Distribute Faxes" Dkt. 49 Exhibit 10.

The "Distributing Incoming Faxes" procedure outlines how the receptionist accesses faxes that arrive as PDFs, reviews the faxes, and where to distribute them. If no recipient is listed, the receptionist is to "determine the appropriate recipient based on the following…Court correspondence goes to Legal Manager." Dkt. 49 Exhibit 9. Plaintiff in her Memorandum in support of Summary Judgment alleges that this procedure "only required that 'court correspondence' be directed to the 'legal department, but these same guidelines had no provisions for handling attorney correspondence 'attorney correspondence' or 'consumer disputes'" Dkt 48 at p 11. Ms. Thompson testified that in her opinion "court correspondence" meant "Any legal correspondence. Any legal matter." Dkt. 49 Exhibit 5 at p. 29 at ln 21 through p 30 at ln 2. Ms. Thompson further clarified that the term "legal correspondence" as she used it "could be court, anything from attorneys, anything from – just any – any legal matter, bankruptcies, any legal thing that would go to court or to do with out legal department." Dkt. 49 Exhibit 5 at p. 30 at ln 10-16. Finally, Ms. Thompson stated that she was trained that a letter from an attorney is "court correspondence" as used in the procedure "Distributing Incoming Faxes." Dkt. 49 Exhibit 5 at p. 30 at ln 17-21.

The plain language reading of this procedure is that these are examples for the receptionist to make her best determination as to the proper place to forward the fax. Specifically, the receptionist is to "determine the appropriate recipient **based on the following**"

(emphasis added). Dkt. 49 Exhibit 9.  At the time of this fax Ms. Thompson had been in this position for more than nine years and had never before misdirected a fax from an attorney other than the fax at issue. Dkt. 49 Exhibit 5 at p. 12 at ln 21-23 and p. 13 at ln 4-10. Ms. Thompson had a clear understanding that all faxes from an attorney went to the legal department and not client care, and she was more than qualified to identify the sender of the fax and forward it according to company procedures.

In addition to this procedure Defendant also had a procedure in place at this time titled "Work Instruction – How to Distribute Faxes," the purpose of which was to make sure all incoming faxes were distributed correctly and promptly. Dkt. 49 Exhibit 10. While Plaintiff argues that the procedure detailed in the previous paragraphs do not have provisions for handling attorney correspondence, this procedure provides additional clarity.  This procedure states "All Legal faxes are to be sent to the Legal manager." Dkt. 49 Exhibit 10 at p. 2 at ¶ 6a. Additionally it provides that "All incoming faxes from a client need to be sent to the Client Care team member they are addressed to." Dkt. 49 Exhibit 10 p. 2 at ¶ 6e.

It is clear from these procedures taken in combination with the testimony of Ms. Thompson, and MED-1's 30(b)(6) representative, that Ms. Thompson was aware that a fax from attorney John Steinkamp should be forwarded to the Legal Department and/or the legal department manager.  But for Ms. Thompson's bona fide mistake sending the fax to the ClientCareInternal e-mail address instead of the legal department, this account would have been marked as disputed per procedures and reported to TransUnion as such.

Plaintiff in her Memorandum seems to take the position that Defendant needs to have produced procedures for how the Client Care Department is to redirect improperly forwarded faxes.  However, Plaintiff misunderstands what is required under §1692k(c). "§1692K(c) does

not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Colletion Services, Inc.* 394F. 3d 531, 539 (7th Cir. 2005). See *Hyman v. Tate,* 362 F. 3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more…, §1692k(c) only requires collectors to adopt reasonable procedures.")  For the purposes of bona fide error defense, a procedure is simply a series of steps followed in a regular orderly definite way. *Jerman v. Carlisle, Mcnellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 587 (2010); *Leeb v Nationwide Credit Corp.* 806 F.3d 895, 899 (7th Cirt. 2015). These procedures must be reasonable but they need not be "state of the art." *Ross v RJM Acquisitions Funding, LLC* 480 F.3d 493 (7th Cir. 2007).

      Here the Defendant had reasonable procedures in place for the handling of faxes received from attorneys, being sent to the legal department for review and to be marked as disputed if a dispute was raised.  The Defendant furthermore had reasonable procedures for how the departments that handle disputes and credit reporting should identify the account as disputed to ensure that it was reported to the Credit Reporting Agencies as such.  These procedures were clearly reasonable as attorney Steinkamp sent six functionally identical dispute letters for his clients to Defendant within a 24-hour period and Ms. Thompson properly routed five of these to the legal department manager. To date, none of the other five clients of Mr. Steinkamp have filed an action against Defendant for failing to report their accounts as disputed.  Mr. Steinkamp is counsel of record on this case and there can be no doubt that if Defendant had failed to report the other accounts as disputed his clients would have brought a similar action.

      Defendant has shown by a preponderance of the evidence that any error in reporting the account as disputed to TransUnion or any credit reporting agency should be excused through the bona fide error defense.  The alleged violation was an unintentional bona fide error that occurred

not withstanding the maintenance of procedures reasonably adapted to avoid such error. Defendant is entitled to summary judgment as a matter of law and Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should determine that there are no genuine issues of material fact, there is an absence of evidence to support Plaintiff's case, and Defendant is entitled to judgment as a matter of law on all violations alleged in Plaintiff's Complaint and Statement of Claims. Accordingly, Defendant's Motion for Summary Judgment should be granted in full and Defendant should be awarded its costs pursuant to Fed R. Civ P. 54(d)(1).

Dated: July 17, 2020

          Respectfully Submitted,

          /s/ Nicholas Moline
          Nicholas Moline, IN Atty # 29711-49
          Attorney for Defendant
          Med-1 Solutions, LLC
          517 U.S. Highway 31 North
          Greenwood, IN  46142
          (317) 883-5600
          Nicholas.Moline@med1solutions.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties of record.

          /s/ Nicholas Moline
          Nicholas Moline, IN Atty # 29711-49
          Attorney for Defendant