UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAURA EWING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-01743-JRS-DML |
| | ) |
| MED-1 SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

**Order on Motions for Summary Judgment (ECF Nos. 47, 49)**

Plaintiff Laura Ewing alleges that Defendant Med-1 Solutions, LLC, ("Med-1") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by continuing to report her debt to a credit reporting agency when Med-1 knew the debt was disputed by Ewing. Ewing and Med-1 each move for summary judgment. (ECF Nos. 47, 49.) For the following reasons, Ewing's motion is denied and Med-1's motion is granted.

## I. Background

In 2015, Med-1 sent Ewing collection letters to collect debts related to medical services. (Ewing Decl. ¶ 2, ECF No. 48-1.) On February 24, 2016, Ewing's attorney sent, on her behalf, a letter via facsimile to Med-1 disputing the debt Med-1 was attempting to collect. (*Id.* ¶ 4; Answer ¶ 28, ECF No. 14.) The next day, Victoria Thompson, Med-1 receptionist, received Ewing's letter and forwarded it to Med-1's Client Care Department, instead of its Legal Department. (Answer ¶¶ 28–29; Def.'s Resp. Interrog. ¶ 5, ECF No. 48-4; Thompson Dep. 27:3–27:8, ECF No. 49-5; ECF No.

1

49-6.) On April 17, 2018, Ewing's TransUnion credit report showed that Med-1 had continued reporting Ewing's debt to TransUnion without indicating that the debt was disputed. (ECF No. 48-3 at 3; *see also* Answer ¶ 34.)

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party," *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017), but the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Where, as here, the parties file cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

Ewing alleges that Med-1 violated § 1692e(8) of the FDCPA, which she alleges also resulted in violations of §§ 1692d, 1692f, and 1692e, by continuing to report her debt to a credit reporting agency when Med-1 knew the debt was disputed by her. In

response, Med-1 raises a statutory affirmative defense.[1] (Answer ¶¶ 2–6, ECF No. 14 at 6; ECF No. 50 at 6.) Specifically, Med-1 asserts that if it violated the FDCPA, such violation was the result of a bona fide error. (Answer ¶¶ 2–6, ECF No. 14.) For the sake of efficiency, the Court will first address Med-1's bona fide error defense before considering whether Ewing has sufficient evidence to show any alleged violation of the FDCPA.

*The Bona Fide Error Affirmative Defense*

The FDCPA imposes civil liability on debt collectors for certain prohibited debt collection practices. 15 U.S.C. § 1692k(a). The FDCPA, however, "provides a safe harbor, a defense that bars liability." *Oliva v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492, 498 (7th Cir. 2017); s*ee also* § 1692k(c). "A debt collector is not liable in any action brought under the FDCPA . . . if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578 (2010) (quoting § 1692k(c)).

To qualify for the bona fide error defense, "the burden is on the defendant to show (1) that the presumed FDCPA violation was not intentional; (2) that the presumed

---

[1] Med-1, originally, also raised the statute of limitations affirmative defense under 15 U.S.C. § 1692(d). (Answer ¶ 2, ECF No. 14 at 7.) Because the viability of the statute of limitations affirmative defense was possibly at issue in a matter then pending before the Unite States Supreme Court, *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), the parties agreed to stay this matter, (ECF No. 34), pending the decision of *Rotkiske*. *Rotkiske*, however, did not address the issue. Now, Med-1 appears to abandon its claim to the statute of limitations affirmative defense, relying solely on its claim to the bona fide error affirmative defense.

3

FDCPA violation resulted from a bona fide error; and (3) that it maintained procedures reasonably adapted to avoid any such error." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)) (internal quotations omitted). Furthermore, the defense is confined to factual and clerical mistakes. *Oliva*, 864 F.3d at 499. Because the Court may presume, without deciding, that a defendant has violated the FDCPA for the purpose of determining whether the bona fide error defense applies, *see Kort*, 394 F.3d at 537, the Court considers each prong in turn.

1. Was the Presumed Violation Intentional?

Med-1's presumed violation was unintentional. On February 25, 2016, Ewing's dispute letter was sent to Med-1 by her attorney, John Steinkamp, via facsimile. (Answer ¶ 28, ECF No. 14.) Victoria Thompson, a Med-1 receptionist of thirteen years, received Ewing's dispute letter, (Answer ¶ 28, ECF No. 14; Thompson Dep. 27:3–27:12, ECF No. 49-5), and forwarded the letter to Med-1's Client Care Department, (ECF No. 49-6), which does not handle credit reporting.

As part of her duties, Ms. Thompson understood that any correspondence sent to Med-1 from an attorney should be forwarded to Med-1's legal department. (Thompson Dep. 13:15–13:17.) Indeed, from February 24 to February 25, 2016, Mr. Steinkamp sent Med-1 six dispute letters, each on behalf of different clients—including Ewing. (ECF No. 49-7.) Five of the letters were forwarded to the legal department; Ewing's letter was not. (S*ee id.*; *see also* ECF No. 49-6.) The evidence shows that Ms.

4

Thompson, the person in charge of forwarding incoming correspondences to the correct departments, unintentionally forwarded Ewing's dispute letter to the wrong department.

Yet, even if she deliberately forwarded the letter to the wrong department, that fact would not negate Med-1's bona fide error defense. This is so because "[a] debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional. *Kort*, 394 F.3d at 537. Here, the presumed violation is that Med-1 continued reporting Ewing's debt to a credit reporting agency when Med-1 knew the debt was disputed by Ewing. The fact that Ms. Thompson sent five out of six dispute letters to the appropriate Med-1 department shows that Med-1 did not intend to violate the FDCPA. Med-1's failure to report Ewing's debt to TransUnion was clearly an unintentional result of Ms. Thompson mistakenly forwarding Ewing's dispute letter to the incorrect Med-1 department. The evidence shows that Med-1 has, therefore, satisfied the first prong of the defense.

2. Was the Presumed Violation a Result of Bona Fide Error?

Med-1's presumed violation was the result of a bona fide error. A bona fide error is one "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538. The evidence shows that Ms. Thompson made a genuine mistake by forwarding Ewing's dispute letter to Med-1's Client Care Department. As previously highlighted, from February 24 to February 25, 2016, Ms. Thompson received six dispute letters from Mr. Steinkamp. Ms. Thompson was familiar with Mr.

5

Steinkamp and knew he was an attorney. (Thompson Dep. 11:22–11:24.) Accordingly, she forwarded five of the six dispute letters to the legal department, and she mistakenly forwarded Ewing's dispute letter to a department that did not handle credit reporting. Also, Ms. Thompson was unaware of her mistake until this litigation. (Thompson Dep. 12:21–13:7.) Med-1's presumed violation of the FDCPA occurred because of a good faith mistake—a bona fide error. Thus, Med-1 has satisfied the second prong of the defense.

3. Does Med-1 Maintain Reasonably Adapted Procedures?

Med-1 has shown that it maintained procedures reasonably adapted to avoid the type of error made in this case. The bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precautions." *Kort*, 394 F.3d at 539. Under the FDCPA, "[p]rocedures reasonably adapted to avoid" errors are "'processes that have mechanical or other such regular orderly steps' designed to 'avoid errors like clerical or factual mistakes.'" *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 n.3 (7th Cir. 2015) (quoting *Jerman*, 559 U.S. at 587). "Determining whether a debt collector's 'procedures' are 'reasonably adapted' to avoid errors 'is a uniquely fact-bound inquiry' susceptible of few broad, generally applicable rules of law." *Id.* (internal quotations omitted).

Although Ewing made no argument regarding the first two prongs of the bona fide error defense and thus waives any such argument, regarding the third prong, she argues that Med-1 has not demonstrated by a preponderance of the evidence that it maintained processes or procedures that were reasonably designed to prevent the

6

error it made. Med-1 responds that it has procedures in place reasonably adapted to avoid the specific FDCPA violations alleged in this case. Med-1 first points to its *Med-1 Solutions FACS & Procedures Manual* ("*Procedure Manual*"), (ECF No. 49-8), to argue that it "maintains a comprehensive and extensive procedure for marking a debt as disputed and reporting it to the credit reporting agencies," (ECF No. 50 at 9). The *Procedure Manual* contains a Section titled "Window 68—Dispute Documentation (Credit Reporting Flags)," which states in relevant part:



> When an RP ["Responsible Party"] informs us that they are disputing an account that is reporting to the credit bureaus (which means there would be "Y" and dates showing in Window 12), we must document this in Window 68. This is done by selecting "D" in the field labeled "Disputed". If an account is not reporting to the credit bureaus, then we would need to make sure "N" is selected in the Equifax, Experian, and Trans Union Fields. For accounts that are not reporting to credit, do not select the "D" in the Disputed drop-down, as this would make the account start reporting to credit as a dispute. This procedure must be followed for all accounts that are being disputed. **This is for both verbal and written disputes**. There are also drop-down selections at the bottom of Window 705 for disputes and requesting credit deletion letters that will send notification to management that you must select. **All disputes need to be reviewed by a manager**.
>
> If a dispute is made after the 30 day validation period, you should inform the RP to send in a written dispute letter along with any documentation that supports their dispute (the dispute itself doesn't need to be in writing, but a written request is more for verifying account accuracy as well as for the RP's and our protection). Once a dispute is made, collection efforts must stop until at least the dispute process has been completed by a manager. If a dispute is made within the 30 day validation period, you should still inform the RP to send in a written dispute letter along with their documentation (again, the verbal dispute is all that is needed to mark the account as disputed, but the written request is encouraged). If the dispute occurs within that Validation Period, collection efforts

7

> must stop in order to review the dispute. In addition to this, we are required by the FDCPA to obtain and send verification of the debt to the RP.
>
> . . .
>
> If the account is past the 30 day Validation period, and if no dispute letter is received, we will notate the account as disputed, but our efforts may continue. If we receive any "Refusal to Pay" letter, per the FDCPA that is considered to be the same as a Cease Communication letter and the account will be handled as such, whether or not the words "cease communication" are included in the letter. The dispute doesn't have to be written for us to mark the account as disputed. However, it is always in the best interest of the RP to send this in writing.
>
> . . .
>
> **Always notify your manager of any disputes or if you have any questions!**

(ECF No. 49-8 at 53) (emphasis in original).

Next, Med-1 points to two procedures it has for handling and distributing incoming faxes to support its argument. Med-1's *Distributing Incoming Faxes*, (ECF No. 49-9), states in relevant part:

> To access the incoming faxes folder in Batches and distribute accordingly.
>
> . . .
>
> 3. Open FAXES folder
> 4. Look for PDF files with current date
> 5. Open PDF file, look for intended recipient
> 6. *If no recipient is listed*, determine the appropriate recipient based on the following: Employment Verifications and Request for Earnings go to HR Manager; Medical Records and Applications for Financial Assistance go to Client Care email group; Request for account information or proof of payment go to Collection Manager email group; *Court correspondence goes to Legal Manager*.
> 7. Send email with PDF attached
> 8. Move PDF to appropriate folder, unless for HR then delete file

8

      9. Check folder several times throughout the day

(*Id.* at 2) (emphasis added). And, Med-1's *Instruction – How to Distribute Faxes*, (ECF No. 49-10), states in relevant part:

> The process is to making [sic] sure all incoming faxes are distributed correctly and promptly. Collection administrative assistant and the Receptionist are responsible for the distribution of all the incoming faxes from the main Med 1 fax machine. To be pulled daily at 8am and 3pm.
>
> . . .
>
> To determine the appropriate recipient you will need to look at the sender, the subject line or read the content of the fax. Distributor will need to right click on the message and choose "Forward."
>
>     a. Legal – All Legal faxes are sent to the Legal Manager (CJS)
>
> . . .
>
>     e. Client Care – All incoming faxes from a client need to be sent to the Client Care team member they are addressed to.

(ECF No. 49-10.)

    Given Med-1's procedures, Ewing argues that Med-1's procedures are not reasonably designed to avoid Med-1's presumed violation of the FDCPA in this case. In support of her argument, Ewing relies on several cases. First, Ewing cites *Leeb v. Nationwide Credit Corporation*, 806 F.3d at 895. In *Leeb*, the defendant failed to show that its violation of the FDCPA was a bona fide error. *Id.* at 899. With respect to the reasonable procedures prong, the defendant argued that it maintained adequate procedures because its employees were trained in the FDCPA and because its employee acted against company policy by improperly sending the dispute letter. *Id.*

at 900. The Seventh Circuit rejected both arguments because the defendant's "procedures" were not "processes that have a mechanical or other such regular orderly steps . . . ." *Id.* (citing *Jerman*, 599 U.S. at 587).

Ewing also cites *Hammock v. Landmark*, No. 1:18-cv-03340, 2020 WL 4558666, at *1 (S.D. Ind. Aug. 7, 2020). In *Hammock*, the defendant failed to show that it had reasonable procedures in place because it provided, as evidence of its procedures, only a portion of its employee's deposition and her affidavit. *Id.* at *2. Moreover, Ewing cites *Lanteri v. Credit Protection Association, L.P.*, No. 1:13-cv-01501, 2020 WL 3200076, at *1 (S.D. Ind. June 15, 2020). In *Lanteri*, the defendants were not entitled to the bona fide error defense because they "failed to introduce sufficient evidence to satisfy all three prongs," including not identifying the person who made the error. *Id.* at *13.

Ewing's reliance on *Leeb*, *Hammock*, and *Lanteri* is unavailing. Each case is distinguishable. In *Leeb* and *Hammock*, the defendants only produced evidence of employee trainings, depositions, or affidavits to assert that they had adequate procedures in place. Here, Med-1 has specifically pointed to three of its procedures, in addition to its employee training, *see infra*. And, in *Lanteri*, the defendant could not identify which employee made the error, failing the first prong, and did not provide evidence of any of its procedures. Here, again, Med-1 has provided evidence of procedures and has identified that Ms. Thompson made the error. Furthermore, the Court has already found that Med-1 met the first two prongs of the bona fide error defense.

The heart of the issue remains, however. Does Med-1 have adequate procedures reasonably adapted to avoid reporting already disputed debts? Med-1's procedures do contain "processes that have mechanical . . . steps designed to avoid errors like clerical or factual mistakes." *Leeb*, 806 F.3d at 900 n.3 (quoting J*erman*, 559 U.S. at 587) (internal quotations omitted). Indeed, Med-1's procedures indicate a step by step process for receiving a dispute letter by fax and forwarding that dispute letter to the legal department. Moreover, its procedures outline the process for documenting, once a dispute letter has been forwarded to Med-1's Legal Department, that a debt has been disputed.

Ewing, however, argues that Med-1 has no policy or procedure for redirecting improperly forwarded communications. In response, Med-1 relies on *Webster v. Receivables Performance Management, LLC*, No. 1:18-cv-03940, 2020 WL 4192896, *1 (S.D. Ind. July 21, 2020). In *Webster*, the defendant decided to discontinue using a fax number it previously used to receive communications regarding debt disputes. *Id.* at *2. The plaintiff, not knowing that the defendant discontinued use of the fax number, used the fax number to send the defendant a dispute letter. *Id.* The defendant prevailed in raising the bona fide error defense. *Id.* at *10. Relevant here, the defendant in *Webster* had procedures in place to prevent violating the FDCPA, including "procedures established for its employees designating how to handle disputed debts," requiring its employees to "pass written and practical tests," and providing annual updates on procedure to its employees." *Id.* at *9. In finding that the defendant met

11

the third prong of the bona fide error defense, the court highlighted that "the question, therefore, is not whether [the defendant] had reasonable procedures to avoid missing any fax sent to an unused fax number, but rather whether [the defendant] had reasonable procedures in place to avoid incorrectly reporting debts that were disputed." *Id.* Such is the case here.

However, in another case factually similar to this case, which Ewing cites in her Complaint, a district court held that the defendant did not meet its burden of establishing the bona fide error defense. *Smith v. Nat'l Credit Sys., Inc.*, 807 F. Supp. 2d 836, 842 (D. Ariz. 2011). In *Smith*, the plaintiff contacted the defendant by telephone and orally disputed the debt, but the defendant failed to mark the file as disputed. *Id.* at 839. The defendant then sent the plaintiff multiple letters regarding his debt and eventually reported the plaintiff's debt to all three national credit bureaus. *Id.* at 840. The defendant's assertion of the bona fide error defense did not succeed. *Id.* at 842. Regarding the reasonable procedures prong, the *Smith* court found that, although the defendant had "policies and procedures for training collectors on the requirements of the Act and for marking accounts disputed," the defendant did not meet its burden of establishing the bona fide error defense. *Id.* The *Smith* court highlighted that the "defendant ha[d] not identified any procedure to ensure that it [did] not erroneously report a disputed debt as undisputed." *Id.* Such is not the case here.

The Court finds the facts of *Webster* more analogous to this case than those in *Smith*. In fact, *Smith* is distinguishable. In *Smith*, the defendant merely trained its employees on the requirements on the FDCPA. Here, as in *Webster*, instead of only

12

training its employees on the requirements of the FDCPA, Med-1 also trains its employees on how to handle disputed debts. *Cf. Leeb*, 806 F.3d at 900 (stating that the defendant "failed to show that it maintained 'procedures reasonably adapted to avoid' errors that could result in this type of violation," because the defendant only trained employees on the FDCPA). Indeed, Med-1 new hires go through compliance training and testing, including training on the FDCPA. (Def.'s Resp. Interrog. ¶ 1, ECF No. 52-2.) Employees must achieve a score of 85% or higher on compliance testing, and all employees undergo annual compliance refresher trainings. (*Id.*) Furthermore, all collection department employees undergo a two-week training program, including training on the *Procedure Manual*. (*Id.*)

Additionally, the *Webster* court stated that, regarding the reasonable procedures prong, the question was whether the defendant had reasonable procedures in place to avoid incorrectly reporting debts that were disputed. Along the same line of reasoning, because the defendant in *Smith* failed to identify any such procedures, the *Smith* court found that the defendant failed to meet its required burden. Here, Med-1 does identify reasonable procedures in place to avoid incorrectly reporting debts that were disputed. The *Procedure Manual* contains not only the procedure an employee is to follow for inputting into Med-1's system that a debt is disputed, but it also contains the procedure for disputes made within or after the 30-day validation period, and the procedure for an account with no reported dispute that is past the 30-day validation period, (*see* ECF No. 49-8 at 53). Importantly, Med-1's procedure requires that all disputes must be reviewed by a manager, which provides an additional fail-

13

safe. *Cf. Webster v. ABC Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 629 (D. Md. 2014) (finding that the defendant failed to meet its burden on the third prong of the bona fide error defense because it failed to present any evidence of redundancy or safeguards in its procedures to prevent the mistaken violation of the FDCPA by its employees). Med-1's fail-safe is in place to "help avoid errors like clerical or factual mistakes." *Jerman*, 559 U.S. at 587. Therefore, like the defendant in *Webster*, and unlike the defendants in *Smith* (and *Leeb*), Med-1's procedures are reasonable.

Ewing's remaining arguments do not change the result here, because Med-1 is not required "to take every conceivable precaution to avoid errors." *Kort*, 394 F.3d at 539. Med-1's bona fide error defense is not destroyed because it does not have procedures in place to redirect improperly forwarded faxes. Even though Med-1 "could have done more . . , § 1692k(c) only requires collectors to adopt reasonable procedures." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). The evidence shows that Med-1 has reasonable procedures in place to avoid continuing to report a debt that was previously disputed.

The Court finds that Med-1 has established by a preponderance of the evidence all three prongs of the bona fide error defense. Thus, Med-1's motion is granted. Because Med-1 is entitled to the bona fide error defense under § 1692k(c), Ewing cannot prevail on her claims and her motion for summary judgment is denied.

## IV. Conclusion

For the reasons mentioned above, Plaintiff Laura Ewing's Motion for Summary Judgment, (ECF No. 47), is **denied**, and Defendant Med-1 Solutions, LLC's Motion for Summary Judgment, (ECF No. 49), is **granted**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 1/25/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Nicholas Moline
MED-1 SOLUTIONS, LLC
nicholas.moline@med1solutions.com

David J. Philipps
PHILIPPS AND PHILIPPS, LTD.
davephilipps@aol.com

Mary E. Philipps
PHILIPPS AND PHILIPPS, LTD.
mephilipps@aol.com

Angie K. Robertson
PHILIPPS AND PHILIPPS, LTD.
angie@philippslegal.com

John Thomas Steinkamp
JOHN STEINKAMP & ASSOCIATES
John@johnsteinkampandassociates.com